UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKI ACKERMAN,	Case No. 22-11180

    Plaintiff,	F. Kay Behm
v.	United States District Judge

WALMART STORES, INC.,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14)

This case is before the court on Defendant Walmart Stores' ("Walmart") Motion for Summary Judgment. (ECF No. 14). Plaintiff Vicki Ackerman ("Ackerman") initially filed her complaint against Walmart in the Wayne County Circuit Court on or around April 8, 2022. (*See* ECF No. 1, PageID.2; ECF No. 1-2). Walmart subsequently removed this case to the United States District Court, Eastern District of Michigan on May 31, 2022. (ECF No. 1). Ackerman's complaint alleges that she slipped and fell on a "slippery and transparent liquid that had been allowed to accumulate on the floor" of a Walmart store and suffered severe injuries as a result. (ECF No. 1-2, ¶ 17). Her complaint raises one claim for negligence against Walmart under a premises liability theory. *Id.*, ¶¶ 10-18.

1

Walmart filed the present motion for summary judgment on March 21, 2023, arguing there is no genuine dispute remaining as to any material fact and they are entitled to judgment as a matter of law. (ECF No. 14). Ackerman filed her response on May 4, 2023, (ECF No. 17), and Walmart filed their reply on May 18, 2023, (ECF No. 19). On July 28, 2023, the Michigan Supreme Court issued a combined opinion in *Alham Kandil-El Sayed v. F & E Oil, Inc.* and *Renee Pinsky v. Kroger Co. of Michigan*. *Kandil-El Sayed v. F & E Oil, Inc.*, No. 162907, 2023 WL 4845611, at *5 (Mich. July 28, 2023). Given the impact of *Kandil-El Sayed* on Michigan's open and obvious doctrine, the court ordered the parties to submit supplemental briefing "addressing whether *Kandil-El Sayed* has any impact on their relevant arguments or on the outcome of Defendant's Motion for Summary Judgment." (ECF No. 20, PageID.320). Walmart submitted supplemental briefing on August 24, 2023. (ECF No. 21). The parties entered a stipulated order on August 25, 2023 allowing Ackerman to submit a supplemental brief "on or before September 22, 2023," but she never did so. (ECF No. 22). The court held a hearing on this matter on November 1, 2023, and both parties participated in oral argument. (*See* ECF No. 23). Considering all of the relevant arguments, the court now **GRANTS** Walmart's motion for summary judgment.

I.  **FACTUAL BACKGROUND**

Ackerman's initial complaint alleges that she was shopping at a Walmart store in Livonia, Michigan on April 6, 2021, when she "suddenly and without warning slipped and fell on an unreasonably dangerous condition, namely a slippery and transparent liquid that had been allowed to accumulate on the floor for an unreasonable amount of time." (ECF No. 1-2, ¶ 7). As a result of this fall, Ackerman alleges she suffered "serious and disabling bodily injury" including injuries to her head, neck, back, shoulders, hips, upper extremities, and lower extremities, as well as other physical pain and suffering and mental anguish, fright, and shock. *Id.*, ¶ 17.

At her deposition on January 5, 2023, Ackerman was asked to provide additional detail about the incident in question. She testified that she was familiar with the Walmart store in question, visiting "once a week [or] once every other week" and that she had been riding an "Amigo cart," or motorized scooter, around the store, as was her common practice. (ECF No. 14-1, PageID.175, Ackerman Dep.). Ackerman testified that, just prior to her fall, she made her way to the freezer aisle and got up from her scooter to grab an item from a freezer shelf. *Id.*, PageID.145. Specifically, she testified:

> Well, I got off the scooter like I always do, and I know I grabbed a box. And I have no idea. I'm not going to – you know, it happened so fast that it seemed like the door shut on me, you know, because sometimes them doors don't stay open. You can open them and sometimes they'll close right away; sometimes they'll stay open, but I don't remember it staying open. To be honest with you, I'm going to say the door closed on me and made me lose my balance.

*Id.* When asked whether she "remember[s] seeing any substances on the floor in the area" where she fell, she responded "I don't remember." *Id.*, PageID.149. She also testified that she did not recall her feet slipping and did not remember whether her clothes were wet after her fall. *Id.*, PageID.150. ("Q. Okay. And do you recall your feet slipping at all? A. No." "Q. But you don't recall seeing any or feeling any wetness on your clothes? A. [] I'm telling you honestly I don't remember."). Ackerman also testified at her deposition that she broke her hip because of the fall and needed a full hip replacement. *Id.*, PageID.156.

## II.     RELEVANT LEGAL STANDARDS

### A.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the

4

record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905,

5

910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Id.* at 251.

    B.    <u>Premises Liability Actions</u>

Under Michigan law, a distinction exists between claims "arising from ordinary negligence" and claims premised on a condition of the land, known as "premises liability actions." *Jeffrey-Moise v. Williamsburg Towne Houses Coop., Inc.*, 336 Mich. App. 616, 626 (2021) (citations omitted). Premises liability actions require a plaintiff to establish the elements of ordinary negligence, namely: "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) the plaintiff suffered damages." *Id.* (citing *Goodwin v. Northwest Mich. Fair Ass'n*, 325 Mich. App. 129, 157 (2018)). Unlike in ordinary negligence actions, however, the relevant duty arises "merely from the defendant's duty as an owner, possessor, or occupier of land." *Id.* (citations omitted). A premises owner will breach its duty of care when it "knows or should know of a dangerous condition on the premises of which the

invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 8 (2016).

Under Michigan law, the causation element in a premises liability action requires a plaintiff to show two different types of causation: (1) cause-in-fact, known as "but-for causation," and (2) legal cause, known as "proximate cause." *Nathan, Tr. of Est. of Charles v. David Leader Mgmt, Inc.*, 342 Mich. App. 507, 522 (2022). The first type of causation, cause-in-fact, requires a plaintiff to demonstrate that "'but for' the defendant's negligence, the plaintiff's injury would not have occurred." *Id.* Once a plaintiff "produces the factual support establishing a logical sequence of cause and effect," they must then "come forward with evidence supporting that the actual cause was proximate, meaning that it created a foreseeable risk of the injury the plaintiff suffered." *Id.* (citing *Taylor Estate v. Univ. Physician Group*, 329 Mich. App. 268, 278 (2019)); *see also Skinner*, 445 Mich. at 163 ("'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences."). However, if a Plaintiff fails to show cause-in-fact, the court does not need to fully examine proximate cause. *Id.* ("A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue.").

To survive a motion for summary judgment on a premises liability claim, a plaintiff's theory of causation must rise above mere "speculation or conjecture." *See Stefan v. White*, 76 Mich. App. 654, 661 (1977) ("Only conjecture can make this causal element to the exclusion of all others. Such speculation or conjecture is insufficient to raise a genuine issue of material fact."). The Supreme Court of Michigan has stated:

> At a minimum a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.

*Skinner*, 445 Mich. at 165. The burden of establishing proximate cause always rests with the plaintiff, and no presumption of proximate cause is created by the mere fact that an accident occurred. *Id.* at 164.

### III. ANALYSIS

As an initial matter, it is important to note that Ackerman's story regarding the cause of her fall has changed significantly between her initial complaint and her response to Walmart's motion for summary judgment. Ackerman's initial complaint alleges that she "slipped and fell on…a slippery and transparent liquid that had been allowed to accumulate on the floor for an unreasonable amount of

8

time." (ECF No. 1-2, ¶ 7).  Ackerman did not file an amended complaint or motion for leave to amend and, instead, at her deposition and in response to Plaintiff's motion for summary judgment she argues for the first time that she did not slip on a "transparent liquid" but rather she fell "when she was struck by a freezer door that closed unexpectedly and faster than usual."  (ECF No. 17, PageID.201).  It is generally recognized that a party may not raise a new theory of liability in response to an opposing party's motion for summary judgment.  *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (citing *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).  It is common for a new theory of liability to reveal itself during discovery, but "the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [Federal Rule of Civil Procedure] 15(a)," not to address it for the first time at summary judgment.  *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).  Likewise, at this stage in the proceedings, the only theory of liability properly before the court is the "slippery substance" theory included in Ackerman's complaint.  *See Desparois*, 455 F. App'x at 666 ("by raising the claims for the first time in his opposition to summary judgment, Desparois did not properly present these claims before the district court.").  However, the key concern underlying this rule is notice and, more

specifically, a defendant's ability to respond to new claims raised for the first time in response to their motion. *Id.* at 667 ("Because the new claims are factually distinct from the original claims, Perrysburg had no notice that it would have to defend against such allegations."). In this case, Walmart did have a chance to respond to these allegations directly in their motion for summary judgment. (*See* ECF No. 14). Likewise, for completeness, the court will also address the soundness of Ackerman's alternate "freezer door" theory.

In the present motion, Walmart argues they are entitled to summary judgment under either the "slippery substance" theory or the "freezer door" theory because Ackerman has not established two of the essential elements of a negligence claim: causation and a breach of the duty owed to a business invitee. *Id.*, PageID.89. Specifically, Walmart argues "Ackerman cannot substantiate her claim that Walmart's conduct or the condition of Walmart's premises, in any way, caused her to fall – whether via a slippery substance on the floor or via the freezer door closing on her" and, therefore, has failed to establish the essential elements of a premises liability claim. *Id.*, PageID.90. The court agrees.

    A.    <u>"Slippery Substance" Theory of Liability</u>

Plaintiff's initial claim is based on allegations that she "slipped and fell on an unreasonably dangerous condition, namely a slippery and transparent liquid

that had been allowed to accumulate on the floor for an unreasonable amount of time" and Walmart breached their duty to her by "allowing the dangerous and unreasonable condition to remain on the ground…" and by "failing to clean, maintain, and/or inspect the area…" (ECF No. 1-2, ¶¶ 7, 13). Even viewing the facts of the case in the light most favorable to Ackerman, however, the court agrees that this theory is wholly speculative. Ackerman testified at her deposition that she does not remember seeing any substances on the floor in the area where she fell and does not recall her feet slipping or feeling any wetness on her clothes. (ECF No. 14-1, PageID.149-50) ("Q. Okay. And do you recall your feet slipping at all? A. No." "Q. But you don't recall seeing any or feeling any wetness on your clothes? A. [] I'm telling you honestly I don't remember."). Teran John, Asset Protection Manager at the Walmart store in question submitted an affidavit stating that, at the time Ackerman fell, "the floor was free from debris and any substances, including but not limited to: liquids and/or water." (ECF No. 14-4, PageID.187, Affidavit of Teran John). Additionally, a photo taken shortly after Ackerman's fall does not show any visible puddles of liquid or other hazards in the freezer aisle. (ECF No. 14-2). Ackerman has submitted no additional information to refute these claims or show that there was, in fact, water or another liquid present when she fell. As such, the record provides no basis under which a jury

11

could find in favor of Ackerman on this claim of negligence. *See Kassab v. Target Corp.*, No. 16-12788, 2017 WL 2880086, at *4 (E.D. Mich. July 6, 2017) (applying Michigan law to a slip-and-fall case and finding Plaintiff failed as a matter of law to establish a claim for negligence where all "the available evidence [] is to the contrary, where no witness reported having observed any liquid or other substance on the floor that could have caused Plaintiff to slip and fall."). Because "a premises liability claim cannot rest upon bare speculation as to the cause of the plaintiff's injury," Ackerman has failed to meet the causation element of negligence to sustain her action under this theory of liability. *Id.*

    B.    <u>"Freezer Door" Theory of Liability</u>

At her deposition and in her response to Walmart's motion for summary judgment, Ackerman argues she fell after she was "struck by a freezer door that closed unexpectedly and faster than usual." (ECF No. 17, PageID.201). While the evidence presented to the court provides more support for this theory than the "slippery substance" theory, it still does not rise above mere "speculation or conjecture." *Stefan*, 76 Mich. App. at 661. In her deposition, Ackerman repeatedly stressed that she does not fully remember what occurred at the time of her fall. (ECF No. 14-1, PageID.149) (Q. "'You cannot remember the events

12

leading up to the fall.' Is that accurate? A. It all happened so fast."). When asked to describe what she does remember about the fall, Ackerman stated:

> Well, I know I got off the scooter like I always do, and I know I grabbed a box. And I have no idea. I'm not going to – you know, it happened so fast that it seemed like the door shut on me, you know, because sometimes them doors don't stay open. You can open them and sometimes they'll close right away; sometimes they'll stay open, but I don't remember it staying open. To be honest with you I'm going to say the door closed on me and made me lose my balance.

*Id.*, PageID.145. When asked if she remembers the door hitting her, she responded: "I felt it, but it happened so fast. I remember it closing. Umm, I don't know." *Id.*, PageID.149. Additionally, when asked whether the door stayed open on its own, she replied: "I thought it did, but I know it came back on me. So, I don't know how long it stayed open..." *Id.* Further, nowhere in Ackerman's deposition transcript or complaint does she suggest the door was malfunctioning at the time of her fall. In fact, when she was asked whether there was "anything wrong with the door...like was the door not working properly?" she responded, "I don't know." *Id.*, PageID.151. She also clarified her prior experience with similar freezer doors, stating "sometimes they stay open; sometimes they don't." *Id.*, PageID.149.

Ackerman's deposition, combined with the other evidence presented in support of the parties' pleadings, does not show that "but for" Walmart's

13

negligence in failing to remedy a broken or malfunctioning freezer door, she would not have been injured. Plaintiff's testimony is full of qualifying statements, such as "I don't know" and "it happened so fast," and "I don't remember." *See id.*, PageID.151 ("Q. So to sum it up, you don't remember how the accident happened? A. No…I just know I went down…I didn't take a mental note."); (*see also* ECF No. 14-3, "Orthopaedic Surgery Consultation Note") ("She is unsure if she had a syncopal episode but cannot remember the events leading up to the fall."). Under Michigan law, "[a]t a minimum, a causation theory must have some basis in established fact…a basis in only slight evidence is not enough." *Skinner*, 445 Mich. at 164. Further, "it is insufficient to allege 'a causation theory that, while factually supported, is, at best, just as possible as another theory.'" *Id.* Likewise, based on the evidence presented to the court by both parties, a jury would again be required to impermissibly speculate or guess about the cause of Ackerman's fall. This is insufficient to establish cause-in-fact. *See Demo v. Red Roof Inns, Inc.*, 274 F. App'x 477 (6th Cir. 2008) (Plaintiff's equivocal statements "amount to speculation about the cause of [his] fall, and the fall's occurrence alone fails to trace [his] injuries to the hotel's negligence."); *Kassab*, 2017 WL 2880086, at *5 (finding plaintiff "cannot raise an inference of causation through his and his companion's after-the-fact observations that the store entrance felt 'a little

14

slippery'" where he previously testified that he had "no idea" what his foot might have slipped on or what caused him to fall.).

Even if Ackerman had established that the freezer door in this case "did not operate as it was supposed to, thus creating a safety hazard within the store," the record fails to provide a basis for charging Walmart with liability for this allegedly unsafe condition. *See Kassab*, 2017 WL 2880086, at *5. "[A] premises owner owes a duty to protect invitees from an unsafe condition on the premises only if (i) the condition was caused by the owner or its employees, or (ii) the owner knew or should have known of the existence of this unsafe condition." *Id.* A plaintiff bears the burden to show "that the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Id.* at *6 (citing *Lowrey*, 500 Mich. 1 at 10). Ackerman does not allege the condition was caused by a Walmart employee and has provided no evidence to suggest Walmart had actual or constructive knowledge that the freezer door was malfunctioning. *Id.* at *5 (holding Plaintiff could not establish a basis for charging Defendant Target with liability where Plaintiff "ma[de] no attempt to produce evidence that a Target employee either created or had actual knowledge of any hazardous condition that might have caused him to slip and fall."). Ackerman does not suggest this freezer door, or any other freezer doors in the Walmart

store, had previously malfunctioned or injured another customer. Additionally, Ackerman does not provide evidence of any store policies for maintaining or monitoring the doors and does not suggest employees had any regular interaction with them. As such, similar to the "slippery substance" theory, Ackerman has failed to meet the causation element of negligence to sustain her action under this theory of liability.[1] *Id.* at *4.

    C.    <u>*Res Ipsa Loquitor* Theory</u>

Ackerman also raises a claim related to the "freezer door" theory under *res ipsa loquitor*, arguing "a freezer door, in ordinary circumstances, simply should

---

[1] Ackerman further alleges this case presents similarities to other cases in which an individual was injured by an automatic sliding door, namely *Smith v. Frederick C. Smith Clinic*, 189 Ohio App.3d 473, (Ohio Ct. App. 2010) and *Chambers v. Total Renal Care, Inc.*, No. 1:13CV735, 2015 WL 545166 (S.D. Ohio Feb. 10, 2015). Both of these cases are applying Ohio law and, as such, their precedential value to this court is low. Additionally, the facts of these two cases are significantly different from the facts here. Both *Smith* and *Chambers* involved individuals who were injured after a medical clinic's automatic sliding doors closed on them while they were trying to enter or exit the building. For a number of reasons, automatic sliding doors present different concerns than ordinary, non-motorized freezer doors. First, premises owners often have the ability to adjust the timing of the automatic door closure, as well as the ability to implement "protection devices to prevent closure in the event someone is standing in the threshold of the door." *See Smith*, 189 Ohio App. at 483 (2010). Additionally, people generally have different expectations about the operation of automatic doors than manual doors, and it is often assumed that automatic doors will not shut on an individual while they are in use. *See Sumate v. Wal-Mart, Inc.*, No. 1:20-CV-911, 2022 WL 44666, at *4 (S.D. Ohio Jan. 5, 2022) (citing *Smith*, 189 Ohio App. 3d at 484) ("Although a commercial building with automatic sliding doors is very commonplace in today's society, common experience with these doors does not suggest that they are likely to close on a person."). Because of these key differences, the reasoning of *Smith* and *Chambers* is not applicable to this case.

not close in a manner to knock an adult to the ground. As such, the door must not be considered to have been functioning or working properly." (ECF No. 17, PageID.206). However, to bring a *res ipsa loquitor* claim, a plaintiff must not only establish "the event was of a kind that ordinarily does not occur in the absence of negligence," but they must also "produce some evidence of wrongdoing beyond the mere happening of the event." *Pugno v. Blue Harvest Farms LLC*, 326 Mich. App. 1, 21 (2018) (citing *Fuller v. Wurzburg Dry Goods Co.*, 192 Mich. 447, 448 (1916)). Examples of cases where the court has applied the *res ipsa loquitor* doctrine include "when plaster unexpectedly falls from the ceiling, when a sign falls from a building, or when a chandelier falls from its fixture." *Id.* (citing Restatement § 328D, illustrations). Given Ackerman's responses in her deposition, the doctrine of *res ipsa loquitor* does not apply in this case. The fact that the door allegedly closed on Ackerman and made her lose her balance is not the kind of event that "ordinarily does not occur in the absence of negligence." *See Rogoszewski v. State Lanes Inc.*, No. 263876, 2006 WL 1185394, at *3 (Mich. Ct. App. May 4, 2006) ("Contrary to plaintiff's assertions, people do slip and fall in the absence of negligence."). This fact is underscored by her testimony that she did not know whether the door was working properly at the time of her injury. *Id.*, PageID.151 ("Q…was the door not working properly? A. I don't know."). As

17

such, the record also provides no basis under which a jury could find in favor of Ackerman on this theory of negligence. *See Kassab*, 2017 WL 2880086, at *6.

## IV. CONCLUSION

Even viewing the facts of this case in the light most favorable to Ackerman, her theories of causation do not rise above "mere speculation or conjecture." *Stefan*, 76 Mich. App. at 661. Ackerman has failed to meet her burden of showing that "a jury could ostensibly find in [her] favor" and, as such, has failed as a matter of law to establish this element of her claim for premises liability. *See Anderson*, 477 U.S. at 248; *Kassab*, 2017 WL 2880086, at *6. Walmart's motion for summary judgment is **GRANTED** and Ackerman's case is **DISMISSED** with prejudice. This is a final order and closes the case.

**SO ORDERED**.

Date: January 8, 2024

s/F. Kay Behm
F. Kay Behm
United States District Judge